IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| DONNIA L. GRIFFIN, | ) | Civil Action No. 3:05-1299-MBS-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On September 17, 2002, Plaintiff applied for SSI and for DIB. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held December 11, 2003, at which Plaintiff appeared and testified, the ALJ issued a decision dated April 22, 2004, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was thirty-eight years old at the time of the ALJ's decision. She has a high school education with one semester of college and past relevant work as a cashier and sales clerk. Plaintiff alleges disability since January 12, 2001, due to lower back pain and knee pain, degenerative

arthritis in both knees, a torn right rotator cuff, and depression. She later alleged problems with migraine headaches, panic attacks, fibromyalgia, restless leg syndrome, carpal tunnel syndrome, and diverticulitis.

The ALJ found (Tr. 27-28):

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2004.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has the following "severe" impairments based upon the requirements in the Regulations 20 CFR § 404.1520(c) and 416.920(b): osteoarthritis and degenerative disk disease of the knees; myofascial pain syndrome; right shoulder, status post two surgeries; and bipolar disorder/depression with panic attacks.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant retains the following residual functional capacity: to lift and carry 10 pounds occasionally and less than 10 pounds frequently with her right upper extremity and 50 pounds occasionally and 25 pounds frequently with her left upper extremity; to stand for at least 2 hours in an 8-hour day; in addition to standing, to walk for at least 2 hours in an 8-hour day; to sit for 6 hours in an 8-hour day; and to push and pull occasionally with her upper and lower extremities. The claimant has the following additional limitations: the need for a sit-stand option; to climb ramps and stairs occasionally; never to climb ladders, scaffolds, or ropes; to balance, stoop, bend, kneel, crawl, and crouch occasionally; never to reach overhead with her right upper extremity; never to work around hazards; to perform only simple, 1-2 step tasks; never to have contact with the general public; and to have occasional contact with co-workers.

7.  The claimant is unable to perform any of her past relevant work. (20 CFR § 404.1565 and 416.965).

8.  The claimant is a "younger individual between the ages of 18 and 44." (20 CFR § 404.1563 and 416.963).

9.  The claimant has a "high school education." (20 CFR § 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work. (20 CFR § 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of light work. (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a companion (light; SVP 2; with 5,000 jobs available in the region and 280,000 jobs available in the nation); a parking lot attendant (light; SVP 2; with 2,000 jobs available in the region and 40,000 jobs available in the nation); and a security guard (light; SVP 2; with 12,000 jobs available in the region and 400,000 jobs available in the nation).

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 CFR §§ 404.1520(g) and 416.920(g)).

On February 23, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on May 2, 2005.[1]

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v.

---

[1]The Commissioner filed a motion to dismiss on September 15, 2006. The Commissioner contended that Plaintiff failed to timely file this action. The undersigned recommended that the motion be denied. On June 12, 2006, the Honorable Margaret B. Seymour, United States District Judge, adopted the report and recommendation.

Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Prior to her alleged disability onset date (January 2001), Plaintiff was treated for major depression (with two psychiatric hospitalizations in 1996), anxiety, migraine headaches, swollen ankles; and pain in her lower back, legs, and right shoulder. Tr. 149-165, 282-305, 342-345, 371-385, and 517-519. An MRI of Plaintiff's lumbar spine on October 20, 1999 was reportedly normal. Tr. 517-519. Plaintiff was treated at the Charleston Family Center from November 2000 to December 2000 and again in May 2003 for anxiety. Tr. 437-441.

On January 12, 2001 (alleged onset date), Dr. Scott Stegbauer, an orthopaedic surgeon, performed surgery on Plaintiff to decompress her right shoulder and repair a torn rotator cuff. She was discharged from Colleton Medical Center on January 14, 2001. Tr. 165. Plaintiff sought treatment in the emergency room of Colleton Medical Center for increased shoulder pain on January 19, 2001. Dr. Jeffery Holman noted that Plaintiff had "inferior subluxation glenohumeral joint secondary to possible failed rotator cuff vs. possible muscle guarding and secondary imbalance." Dr. Holman recommended that Plaintiff follow up with Dr. Stegbauer and continue with shoulder immobilization and anti-spasm medications. Tr. 257, see Tr. 338-340. During follow up visits on

January 22 and 25, 2001, Dr. Stegbauer opined that Plaintiff's shoulder subluxation would improve after she started physical therapy. He prescribed anti-inflammatory and pain medications and reported that Plaintiff had no other major problems at that time. Tr. 264.

Plaintiff again sought care in the emergency room for shoulder pain on February 5, 2001. The attending physician noted that Plaintiff had poor pain tolerance despite multiple narcotics and muscle relaxants. Plaintiff was assessed with status post right rotator cuff repair symptoms, chronic pain, decreased pain tolerance, and possible depression. Tr. 276.

Dr. David Morrow, an orthopaedic surgeon, treated Plaintiff from February 14 to October 24, 2001. Tr. 315-326. On April 30, 2001, a right shoulder arthrogram indicated no findings compatible with a recurrent rotator cuff tear. Tr. 322. On May 9, 2001, Dr. Morrow noted that Plaintiff's right rotator cuff tear was intact, but her shoulder was extremely painful and stiff. He recommended further surgery. Tr. 321. On August 27, 2001, Plaintiff underwent a second surgery on her right shoulder for decompression, open exploration of the rotator cuff, and deltoid repair. Dr. Morrow noted that the second surgery was performed because physical therapy and pain management had not produced any reasonable range of motion and prior treatment notes indicated that Plaintiff continued to have shoulder pain after her first surgery. Tr. 315-317, 319-326, 336-340. On September 5, 2001, Dr. Morrow noted that Plaintiff had "significant improvement in many of her symptoms, although she continue[d] to have a hypersensitivity to her skin as well as decreased range of motion." Tr. 318. On October 24, 2001, Dr. Morrow noted that Plaintiff's right shoulder was less tender and painful, and she had mildly more range of motion than she had previously. There was no evidence of swelling or redness. Tr. 317.

On March 2, 2001, a State agency physician reviewed Plaintiff's records and opined that she had the physical RFC to lift twenty pounds occasionally and ten pounds frequently, stand/walk or sit about six hours each in an eight-hour day, and limited ability to push or pull with the right upper extremity. The physician further opined that Plaintiff could never crawl; could never climb ladders, ropes or scaffolds; could frequently balance, stoop, kneel, crouch, and climb ramps/stairs; had limited ability to reach with her right shoulder; and could occasionally handle objects with her right upper extremity. Tr. 307-313.

Plaintiff was treated at Coastal Empire Community Mental Health Center on July 6, October 25, November 7, and December 5, 2001 and again on March 28, 2002. Treatment consisted of group therapy and medications for dysthymia, dependent personality features, and a history of sexual and physical abuse. Mental health care providers indicated that Plaintiff had poor sleep and energy, with possible audiovisual hallucinations, but she denied any suicidal ideation. Tr. 364-368.

Plaintiff was treated by Dr. Carlysle Barfield, a rheumatologist, from December 13, 2001 to March 23, 2003. Tr. 425-3436. On December 13, 2001, Plaintiff reported she experienced lifelong generalized joint pain, fatigue, poor sleep, and depression with a history of panic attacks and post-traumatic stress disorder. Dr. Barfield's examination revealed that Plaintiff had shoulder tenderness and pain on movement of her right shoulder, tenderness over both elbows and both wrists, mildly crepitant and tender knees, and tenderness on her back. Dr. Barfield opined that Plaintiff had degenerative joint disease in her knees and possible fibromyalgia. Tr. 434-436. On March 2002, Plaintiff returned to Dr. Barfield and reported generalized pain, poor sleep, and lifelong headaches. He noted that Plaintiff was "tender virtually everywhere she was palpated." Tr. 432. On May 22, 2002, Plaintiff reported improvement in her pain, fatigue, depression, and sleep

patterns. She continued to see Dr. Barfield periodically for follow-up care on July 30, August 29, and September 26, 2002. Tr. 427-432. On November 26, 2002, Plaintiff complained to Dr. Barfield of knee pain. She reported that she was sleeping well, she had no fatigue, and her depression had improved. Dr. Barfield adjusted Plaintiff's medications. Tr. 426. On January 23, 2003, Dr. Barfield noted that Plaintiff had knee pain and scattered pain in other areas, but she had little fatigue. He injected Plaintiff's left knee with Synovisc. Tr. 426. On February 13, 2003, Dr. Barfield noted that Plaintiff's left knee pain was improved, but not resolved; she had right knee pain; her depression was stable; and she did not have fatigue. He injected her right knee with Synovisc. Tr. 426. On February 27, 2003, Dr. Barfield noted that Plaintiff had no fatigue, made no complaints of generalized pain, and was depressed. Tr. 426.

On February 1, 2002, State agency psychologist Dr. Judith M. Von reviewed Plaintiff's records, completed a Psychiatric Review Technique form, and assessed her mental residual functional capacity. Tr. 346-363. Dr. Von opined that Plaintiff had affective and personality disorders that produced mild restriction of Plaintiff's activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. 356. Dr. Von opined that Plaintiff had moderately limited abilities to understand, remember, and carry out detailed instructions; complete a normal workweek and perform at a consistent pace; and set realistic goals and make plans independently. She found that Plaintiff was not significantly limited in all other categories. Dr. Von noted that Plaintiff appeared capable of at least simple, repetitive tasks; could attend work regularly, accept supervisory feedback, and interact appropriately with others; and appeared capable of sustaining a typical work routine. Tr. 346-363.

On February 4, 2003, Plaintiff was examined by Dr. Vidya H. Upadhyaya, a psychiatrist. Tr. 386-389. Plaintiff reported that she had been depressed her entire life and had auditory hallucinations, manic episodes, and panic attacks. Dr. Upadhyaya noted that Plaintiff's medical history included degenerative joint disease, fibromyalgia, arthritis, and restless leg syndrome. Tr. 387. Plaintiff claimed she was unable to work due to pain in her legs, but spent her time at home running errands and taking care of her three children. She reported she was able to cook, clean, do laundry, and do dishes, except when she got depressed. Dr. Upadhyaya noted that Plaintiff's mood was sad, but she was alert, oriented, and cooperative; her thought processes were goal-directed; and she denied any suicidal ideation, hallucinations, or delusions. His assessment included ruling out bipolar affective disorder and panic disorder with agoraphobia, with a global assessment of functioning ("GAF") score of 55 to 60. Dr. Upadhyaya opined that Plaintiff was on a suboptimal dose of antidepressants, and indicated she would benefit from being put on a mood stabilizer and from therapeutic doses of medications. He concluded that Plaintiff was currently "incapacitated due to her depression and due to her physical ailments and her knee problems and is physically unable to work." Tr. 388.

Plaintiff was examined by Dr. Douglas E. McGill, a physical medicine and rehabilitation specialist, on February 6, 2003. Tr. 390-39. Plaintiff reported that she had experienced joint pain all her life and she had pain and stiffness in her hands, shoulders, neck, and back. She also complained that her knees gave way, she fell down on occasion, she had a "crunching sensation" in her knees, and she had limited shoulder range of motion. Plaintiff reported that she quit working due to emotional problems and stress. Dr. McGill noted that Plaintiff had a slightly antalgic gait; tenderness in her back, hips, and knees; left knee swelling; and crepitus with knee motion. Tr. 391-

8

392. He noted that Plaintiff had 5/5 hip and ankle strength, 4/5 knee strength, full knee extension, 3/5 left knee flexion, 5/5 upper extremity strength on the left, 4/5 strength in her right shoulder, reduced shoulder range of motion, intact sensation in both upper extremities, and no pain with straight leg raising. Dr. McGill assessed polyarthritis including the spine and extremities, bipolar disorder, history of abuse, myofascial pain syndrome, and history of right shoulder surgery. He noted that Plaintiff had limited access to treatment and might benefit from further arthritis treatment to control her musculoskeletal symptoms. Dr. McGill opined that Plaintiff's limited ability to engage in repetitive joint range of motion of her shoulders, knees, neck, and back would likely "limit her with regard to repetitive movements and prolonged standing, sitting or walking." Tr. 392. He further opined that Plaintiff "likely should avoid any climbing activities and carrying heavy weights," and she "likely has significant limitations due to psychiatric illness." Id. Dr. McGill also stated that Plaintiff would likely benefit from further psychiatric treatment and medications and concluded that, if she received adequate treatment and gained control of her symptoms, she should might be a good candidate for vocational rehabilitation for further education and job training. Tr. 393.

On February 12, 2003, Dr. Herbert Gorod, a State agency psychiatrist, reviewed Plaintiff's records, completed a Psychiatric Review Technique form, and assessed her mental RFC. Tr. 396-413.Dr. Gorod found that Plaintiff had an affective disorder that produced moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. Tr. 396, 399, 406. Dr. Gorod opined that Plaintiff was moderately limited in her ability to complete a normal workday and workweek and perform at a consistent pace; moderately

9

limited in her ability to interact appropriately with the general public; and not significantly limited in all other categories. Tr. 410-411.

On February 18, 2003, Dr. F. Keels Baker, a State agency physician, reviewed Plaintiff's records. Dr. Baker opined that Plaintiff had the physical RFC to lift fifty pounds occasionally and twenty-five pounds frequently; stand/walk or sit about six hours each in an eight-hour day; had the ability to reach overhead only occasionally with her right upper extremity; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; and could occasionally balance, stoop, kneel, crouch, or crawl. Tr. 415-417. Another State agency physician reevaluated Plaintiff's capacity in June 2003 and reached the same conclusions as Dr. Baker. Tr. 442-449.

Plaintiff was treated for one episode of diverticulosis on March 24, 2003, at the Colleton Medical Center. She was given medication and told to follow up in two days. Tr. 422-424.

Plaintiff was treated by Dr. Jeffrey Holman at Edisto Orthopaedics from April to August 2003. Tr. 503-516. On April 4, 2003, Dr. Holman's impression was patella femoral osteoarthritis. He noted that her weight bearing x-rays showed no significant compartmental disease in either the medial or lateral compartments. Only minimal osteoarthritis was noted. A knee support and exercise therapy were prescribed. Tr. 515-516. Plaintiff complained of low back pain and bilateral knee problems on May 2, 2003. Dr. Holman's impression was patella femoral chondrosis bilateral; mechanical low back pain; and sciatica, left leg with component of L-4 and query S-1 radiculopathy. He prescribed anti-inflammatory medication and physical therapy. Tr. 514. Plaintiff complained of knee and back pain and hand numbness on May 30, 2003. Neurontin and exercises for carpal tunnel syndrome were prescribed. Tr. 512. Dr. McGill conducted nerve conduction and EMG studies on August 14, 2003, which revealed findings that were within normal limits and not

suggestive of an electrodiagnostic evident radiculopathy or neuropathy. Tr. 505-510. On August 22, 2003, Dr. Holman noted that Plaintiff's nerve studies were unremarkable for any signs of objective nerve injuries. He opined that most of Plaintiff's pain was myofascial and suggested that she return back to her rheumatologist on a per needed basis. Tr. 514.

Plaintiff alleges that: (1) the ALJ substituted his own opinion for virtually all of the expert medical evidence, (2) failed to consider the combined effect of her multiple impairments, and (3) performed a flawed credibility analysis. The Commissioner contends that the ALJ's decision is supported by substantial evidence.[2]

    A.    Consultative Physicians

Plaintiff appears to allege that the ALJ erred by not giving greater weight to the opinions of her two consultative physicians (Dr. Upadhyaya and Dr. McGill) and substituting his own opinion for virtually all of the expert medical evidence. The Commissioner contends that the ALJ properly considered these medical opinions and discounted them because neither physician saw Plaintiff more than one time[3] and their opinions were contradicted by other evidence of record.

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

[3]It appears that Dr. McGill examined Plaintiff on one occasion (February 6, 2003) and later conducted nerve conduction and EMG studies (August 14, 2003).

It appears that Dr. Upadhyaya and Dr. McGill are consulting physicians and not treating physicians, such that their opinions should not be given the same weight as the opinions of treating physicians. The ALJ, however, appears to have discounted these physicians' opinions in part based on erroneous reasons. The ALJ discounted Dr. Upadhyaya's opinion in part because he did not formally diagnose her with depression. Review of Dr. Upadhyaya's medical records, however, reveals that he stated that Plaintiff was "considerably depressed" and was on "subtherapeutic doses of antidepressant medication." Tr. 389. He noted that Plaintiff became extremely tearful during the examination and exhibited a sad mood. Tr. 390-393. The ALJ discounted Dr. McGill's opinion in part because "during her physical examination, the claimant had full ranges of motion in all areas, except for slight limitations in flexion and extension of the lumbar spine, the knees, and the right shoulder." Tr. 23. Review of Dr. McGill's medical notes, however, reveals that he noted that Plaintiff had an antalgic gait with a decreased stance on the left; guarding of transitional movements; limited abduction of her shoulder; tenderness to palpation of the cervical, thoracic, and paraspinal regions of her spine; tenderness in the lumbosacral junctions and surrounding soft tissue at the gluteal region; tenderness with range of motion at the hips and knees; only 3/5 muscle strength to her left knee; marked crepitance on range of motion of both knees; discomfort on full extension; swelling anteriorly to her left knee; guarding with lumbosacral movements; and limited extension to 15 degrees. Tr. 391-392. This action should be remanded for the ALJ to consider all of the medical evidence, including that of Dr. Upadhyaya and Dr. McGill, in determining Plaintiff's residual functional capacity.

B.      Combination of Impairments

Plaintiff alleges that the ALJ failed to properly consider her impairments in combination. Specifically, she claims that the ALJ fragmented each of her impairments when determining whether they met the requirements of a listing and in determining her RFC. Plaintiff claims that the ALJ completely disregarded her impairments which he found to be non-severe. The Commissioner contends that the ALJ thoroughly considered all of Plaintiff's impairments together, considered all of the medical evidence, provided appropriate RFC limitations that incorporated her restrictions from her impairments, and evaluated her ability to perform work on a sustained basis in light of her impairments.

In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and he must adequately explain his evaluation of the combined effect of those impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989); Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(c), and the general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); see also Hines, 872 F.2d at 59.

The ALJ properly considered all of Plaintiff's combinations and their combined effects. He specifically found that Plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments. Tr. 21-22, 27. The ALJ specifically discussed all of Plaintiff's severe and non-severe impairments in the "Evaluation of the Evidence" section of his decision (Tr. 21-24). See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992)(ALJ sufficiently

13

considered impairments in combination where he separately discussed each impairment, the complaints of pain and daily activities, and made a finding that claimant's impairments did not prevent the performance of past relevant work).

The ALJ also considered Plaintiff's limitations from her combination of impairments in the hypothetical to the VE. Specifically, the ALJ asked the VE to consider a claimant of Plaintiff's age, education, and past work experience who could lift fifty pounds on an occasional basis and twenty-five pounds on a frequent basis with her left upper extremity; lift ten pounds on an occasional basis and less than ten pounds on a frequent basis with her right upper extremity; stand and walk for at least two hours in an eight hour day; sit for six hours in an eight hour day; only occasionally push and pull with her upper and lower extremities; never climb ladders, scaffolds, and ropes; never be around hazards; only occasionally climb, balance, stoop, kneel, crouch, and crawl; never reach overhead with her right upper extremity; only perform simple one, two-step tasks; have a nonpublic job with only occasional contact with coworkers; and needed a sit/stand option. Tr. 576. In response, the VE identified a significant number of jobs that Plaintiff could perform. Tr. 577.

      C.     Credibility/Pain

Plaintiff alleges that the ALJ performed a flawed credibility analysis. Specifically, she claims that the ALJ erroneously discounted her testimony in part because he found that she failed to mention her severe limitations of falling and foot swelling to her treating physicians, when in fact she reported to Dr. McGill that she had episodes where her knees had given out (Tr. 390) and she reported swollen ankles and feet to one of her physicians (Tr. 384). She also claims that the ALJ erroneously discounted her testimony based on Dr. Upadhyaya's notations concerning her daily activities, but that the ALJ failed to take into account that she reportedly could not perform these

14

activities when she was depressed. Plaintiff also argues that the ALJ took out of context one isolated note that her sleep improved with medication. Finally, Plaintiff contends that the ALJ failed to properly apply the two-step process for evaluating credibility.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Here, the ALJ does not appear to have followed the two-step procedure outlined above. He does not specifically address whether there is objective evidence of an impairment or impairments, but merely found that Plaintiff's allegations were exaggerated and unsupported by the medical evidence. The Commissioner does not address the two-step process, but instead argues that the ALJ properly evaluated Plaintiff's subjective complaints based on inconsistencies in the record. This action should be remanded to the Commissioner to properly evaluate Plaintiff's subjective complaints.

15

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to properly consider Plaintiff's credibility and to properly evaluate all of the evidence, including the medical records of Dr. Upadhyaya and Dr. McGill.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and 1383(c)(3) and that the case be remanded to the Commissioner for further administrative action as set out above.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

August 14, 2007
Columbia, South Carolina